```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                   JACKSON DIVISION
```

**CURTIS JORDAN**                                                      **PLAINTIFF**

**VS.**                                    **CIVIL ACTION NO. 3:06-cv-233-WHB-LRA**

**MISSISSIPPI STATE DEPARTMENT OF HEALTH, ET AL.**          **DEFENDANTS**


### OPINION AND ORDER

This cause is before the Court on the Motion of Defendants for Summary Judgment. The Court has considered the Motion, Response, Rebuttal, attachments to the pleadings as well as supporting and opposing authorities and finds that the Motion is well taken and should be granted.

### I.  Factual Background and Procedural History

Plaintiff, Curtis Jordan ("Jordan"), an African American, was hired by Defendant the Mississippi State Department of Health ("MSDH") on October 20, 1997, as the Bureau Director II, Manager of the WIC Program. Sometime in 2003, Defendant Dr. Brian W. Amy ("Amy"), the then Executive Director of the MSDH, contacted Jordan and requested that he laterally transfer to the position of Bureau II Director of Immunization. Jordan began employment in that capacity with the MSDH on March 1, 2003. As Bureau II Director of Immunization, Jordan was supervised by Defendant Deborah Joy Sennett ("Sennett"), who was then the head of the Office of

Communicable Diseases, and Defendant Jim Craig ("Craig"), who was then the head of the Office of Health Protection.  In both his capacity as Bureau Director II, Manager of the WIC Program, and as Bureau II Director of Immunization, Jordan was considered a non-state service employee.

On January 27, 2004, Jordan received a Performance Appraisal Review ("PAR") of 2.0, which indicated that he had met the expectations for his position as Bureau II Director of Immunization during the preceding calendar year.  In January of 2005, after reviewing Jordan's job performance, Sennett issued him a PAR of 1.29, indicating that he had failed to meet the expectations of his position.  Jordan's PAR of 1.29 was based, in part, on his having been cited for insubordination for asking a project officer for the Center for Disease Control ("CDC") to remove Larry Franklin ("Franklin"), the CDC liaison with whom he worked, from that position, even though he did not have the authority to make that request.  Jordan's below-standard PAR was also allegedly attributed to his (1) failure to timely complete budget revisions necessary to secure federal funding from the CDC; (2) having allowed subordinate employees to perform his duties; (3) display of disdain, apathy, and carelessness in and for his position as Bureau II Director of Immunization; and (4) seeming disinterest in improving or learning about the immunization program.

Based on his PAR, and on Sennett's recommendation with which Craig concurred, Amy terminated Jordan's employment on February 7, 2005. On February 10, 2005, Jordan filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race and gender-based discrimination. Specifically, in his Charge of Discrimination, Jordan alleged that the MSHD engaged in a "pattern of discrimination against black males and males in other minority groups, and targets individuals in these groups for discharge." Jordan received a Right to Sue Letter from the EEOC on January 25, 2006, and filed his initial Complaint in this Court on April 25, 2006. On August 25, 2006, Jordan filed an Amended Complaint alleging claims of discrimination on the bases of gender and race in violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000 *et seq.* ("Title VII"); claims of discrimination on the basis of age in violation of the Age Discrimination in Employment Act of 1967, codified at 29 U.S.C. § 621, *et seq.* ("ADEA"); and a claim of emotional distress. Jordan also alleged that the defendants' actions "constitute arbitrary governmental action in violation of the Fourteenth Amendment to the United States Constitution" and are therefore "also authorized by 42 U.S.C. § 1983."

On August 16, 2007, the Court entered an Opinion and Order by which all of Jordan's claims, with the exception of his Title VII claim against the MSDH and his Section 1983 claims against Amy,

Sennett, and Craig in their individual capacities, were dismissed. See Docket No. 46.  By that same Opinion and Order, Jordan was directed to file a reply pursuant to Rule 7(a) of the Federal Rules of Civil Procedure addressing the qualified immunity defense asserted by Amy, Sennett, and Craig.  Thereafter, on September 28, 2007, Jordan filed a Second Amended Complaint alleging that the defendants had discriminated against him on the bases of gender and race in violation of Title VII, and alleging that "Defendants Craig and Sennett and Amy totally disregarded the Plaintiff's due process rights.  He was not informed of the charges against him, without affording him a hearing or challenge the allegations against him." See Second Amended Complaint [Docket No. 49], ¶ 29.  As Jordan has again alleged claims arising under federal law, the Court may properly exercise subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.  Defendants have now moved for summary judgment on Jordan's claims.

## II.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED.

4

R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists.

5

It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

### III.  Legal Analysis

**A.  Claim for Wrongful Termination Under Title VII**

In his Second Amended Complaint, Jordan alleges that as "an African American male [he] is in a class of persons protected by Title VII from unlawful employment discrimination", that he was terminated "from his post as Bureau Director II without justification or cause", and that the "Defendants discriminated against [him] because of his sex, race and/or age in failing to subject other similarly situated employees, women, white males and younger aged individuals to the same conditions as [him]." See Second Amended Complaint, ¶¶ 26, 28 and 32. Claims of discrimination under Title VII are examined using the burden-shifting framework announced by the United States Supreme Court in the cases of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)

6

and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).  Thus:

> A plaintiff can prove intentional discrimination through either direct or circumstantial evidence.  Where the plaintiff offers circumstantial evidence, the McDonnell Douglas – Burdine framework requires the plaintiff to establish a prima facie case of discrimination, which, if established, raises a presumption of discrimination.  The employer must then produce a legitimate nondiscriminatory reason for the adverse employment decision.  Once the employer produces a legitimate nondiscriminatory reason, the presumption of discrimination dissipates.  The plaintiff bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against h[im] because of h[is] protected status.

Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219-20 (5th Cir. 2001).

To establish a prima facie case of wrongful termination under Title VII, Jordan must show: (1) he is a member of a protected class, (2) he was qualified for the position he lost, (3) he suffered an adverse employment action, and (4) that others similarly situated were more favorably treated or that his position was filled by a non-protected class member.  See Urbano v. Continental Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998); EEOC v. Brown & Root, Inc., 688 F.2d 338, 340 (5th Cir. 1982).

The Court finds that there exists a genuine issue of material fact with regard to whether a prima facie case of wrongful termination has been made.  Jordan has clearly satisfied the first three elements of a prima facie case of wrongful termination as (1) he is an African-American, (2) he was qualified for his position as

Bureau II Director of Immunization as evidenced by the fact that he was laterally transferred to that position at Amy's request, and (3) he was terminated. As regards the fourth element, Jordan has presented evidence to show that he was replaced by an African-American female. See Pl.'s Resp., Ex. E (Sennett Dep.), 40. Jordan has also submitted evidence that white bureau directors were not recommended for termination even though they had untimely submitted grant proposals to the CDC. Id., Ex. E (Sennett Dep.), 20-21. Based on the record before it, the Court finds there exists a genuine issue of material fact with regard to whether Jordan has stated a prima facie case of wrongful termination.

As Jordan has demonstrated a colorable prima facie case of wrongful termination, the burden now shifts to the MSDH, which must articulate a legitimate, non-discriminatory reason for his termination in order to defeat the presumption of discrimination. On this issue, the MSDH contends that Jordan was terminated because he failed to meet the expectations of his position. See Defs.' Mot. for Summ. Jud., Ex. 3 (Sennett Dep.) at 29. Specifically, the MSDH claims that Jordan failed to timely resubmit a budget proposal to the CDC, which potentially jeopardized funding from that agency to the State. See id., Ex. 3 (Sennett Dep.) at 29-30. The MSDH also contends that Jordan received a below-standard PAR; he delegated many of his duties, including grant and program requirements/responsibilities, supervision of departmental staff,

8

vaccine management, and budgeting to his subordinates; he seemed disinterested in his job as evidenced by his failure to meet grant proposal deadlines and by delegating his job responsibilities; and he resisted management directives as evidenced by the citation he received for insubordination after requesting the transfer of the CDC liaison with whom he worked although he had no authority to make the request and had been specifically told to work with that liaison. Id., Ex. 3 (Sennett Dep.) at 31, 33-34, 37-39, 41-42, 51, 55, 62, 64, 76, 79.[1]  Based on this evidence, the Court finds that the MSDH has satisfied its burden of articulating a legitimate, non-discriminatory reason for terminating Jordan's employment. See e.g. Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 416 (5th Cir. 2007) (finding that insubordination constituted a legitimate, non-discriminatory basis for termination under Title VII); Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 346-47 (5th Cir. 2007) (finding that the defendant had stated a legitimate, non-discriminatory reason for termination in a case in which the plaintiff was terminated for poor work performance and insubordination).

Under the McDonnell – Burdine framework, the burden now shifts back to Jordan who must "show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but

---

[1] Additional specific reasons for Jordan's below-standard PAR are attached to Sennett's recommendation for his termination. See Defs.' Mot. for Summ. Jud., Ex. 16.

9

was merely a pretext for discrimination." <u>Patrick v. Ridge</u>, 394 F.3d 311, 315 (5th Cir. 2004). To satisfy this burden, Jordan must show that the reasons articulated by the MSDH for his termination were false, and that he was actually terminated for discriminatory reasons. See <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason"). "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated his employer's decision, such as through evidence of (1) disparate treatment, or (2) that his employer's explanation is unworthy of credence." <u>Wallace</u>, 271 F.3d at 220 (citations omitted) (alterations in original).

> Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient." This court has consistently held that an employee's "subjective belief of discrimination" alone is not sufficient to warrant judicial relief.

<u>Auguster v. Vermilion Parish Sch. Bd.</u>, 249 F.3d 400, 403 (5th Cir. 2001).

In the case *sub judice*, there is no evidence of pretext. First, in order for a "plaintiff to show disparate treatment, he must demonstrate 'that the misconduct for which he was discharged was nearly identical to that engaged in by an employee (not within his protected class) whom the company retained.'" <u>Wallace</u>, 271 F.3d at 221 (quoting <u>Smith v. Wal-Mart Stores (No. 471)</u>, 891 F.2d

1177, 1180 (5th Cir. 1990)) (alterations in original).  Here, Jordan has not presented any evidence that female employees were retained after receiving below-standard PARs, submitting untimely grant and budget proposals/revisions, delegating duties to insubordinate employees, or engaging in insubordination by recommending the termination/transfer of CDC liaisons. Additionally, while Jordan has presented some evidence that other white Bureau II Directors submitted untimely budget proposals and had received critical job evaluations, he again has not submitted any evidence to show they were retained after receiving below-standard PARs, delegating duties to insubordinate employees, or engaging in insubordination.  Second, the Court finds that Jordan has failed to show that the explanation for his termination is unworthy of credence.  The reasons articulated by MSDH are considered credible even if it was mistaken regarding whether Jordan was to blame for the untimely budget proposals/revisions, or whether he usurped his authority by recommending the transfer/termination of the CDC liaison. See Mayberry v. Vought Aircraft Co., 55 F. 3d 1086, 1091 (5th Cir. 1995) (finding that "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").  As explained by the United States Court of Appeals for the Fifth Circuit:

> [E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory

11

> reason. We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue.... [A] dispute in the evidence concerning ... job performance does not provide a sufficient basis for a reasonable factfinder to infer that [the] proffered justification is unworthy of credence.

Mayberry, 55 F.3d at 1091 (quoting Little v. Republic Refining Co., Ltd., 924 F.2d 93, 97 (5th Cir. 1991)).

Based on the evidence before it, the Court finds that Jordan has failed to show that there exists a genuine issue of material fact as to whether the legitimate, non-discriminatory reasons articulated by the MSDH for his termination were a pretext for discrimination. The Court additionally finds that a reasonable jury could not infer that the reasons proffered by the MSDH are unworthy of credence and, therefore, there are no grounds on which a jury could find that discriminatory intent actually motivated that decision. Accordingly, the Court finds that the MSDH is entitled to summary judgment on Jordan's Title VII claims.

**B.   Claims for Violation of 42 U.S.C. § 1983 Against Amy, Sennett, and Craig**

In his Second Amended Complaint, Jordan alleges: "Defendants Craig and Sennett and Amy totally disregarded the Plaintiff's due process rights. He was not informed of the charges against him, without affording him a hearing or challenge the allegations against him." See Second Amended Compl., ¶ 29. Jordan's claims under 42 U.S.C. § 1983 are apparently predicated on this

allegation. See id. at ¶ 7 (alleging that the complained of actions constitute arbitrary governmental action in violation of the Fourteenth Amendment to the United States Constitution.... [And] are also authorized by 42 U.S.C. § 1983."). Defendants Amy, Sennett, and Craig move for summary judgment arguing they are protected against liability on the basis of qualified immunity.

Qualified immunity provides a shield from civil liability to officials whose conduct does not reasonably violate a clearly established constitutional or statutory right. Davis v. Sherer, 468 U.S. 183, 194 (1984). See also Johnston v. City of Houston, 14 F.3d 1056, 1059 (5th Cir. 1994) ("Whether a government official is entitled to qualified immunity generally turns on the objective reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken.")(alterations in original)(citations omitted). The defense of qualified immunity, however, only applies to claims alleged against officials in their individual, and not their official, capacities. Foley v. University of Houston Sys., 355 F.3d 333, 337 (5th Cir. 2003).

The Court undertakes a two-step analysis to determine whether a defendant may successfully avail himself of the defense of qualified immunity. First, the Court must determine whether the plaintiff has alleged a violation of constitutional or statutory rights. If such violation is alleged, the Court next considers

"whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law."  Hare v. City of Corinth, 135 F.3d 320, 326 (5th Cir. 1998)(citing Rankin v. Klevenhagen, 5 F.3d 103, 108 (5th Cir. 1993) ("When evaluating whether a plaintiff stated a constitutional violation, we look to currently applicable constitutional standards.  However, the objective reasonableness of an official's conduct must be measured with reference to the law as it existed at the time of the conduct in question."))(alterations in original)(quotations and citations omitted).  See also Anderson v. Creighton, 483 U.S. 635, 638 (1987) (finding that qualified immunity shields government officials provided "their actions could reasonably have been thought consistent with the rights they are alleged to have violated.").

In his Response to the Motion for Summary Judgment, Jordan concedes that Amy is entitled to invoke the privilege of qualified immunity with regard to his Section 1983 claim.  See Pl.'s Mem. in Supp. of Resp. to Mot. for Sum. Jud., 15.  Accordingly, the Court finds that Amy is entitled to summary judgment on this claim.

Defendants Sennett and Craig argue that are shielded by qualified immunity because they did not violate any of Jordan's constitutional rights.  Although Jordan alleges a violation of his Fourteenth Amendment right to due process, the Court finds that

14

such right cannot be invoked under the facts of this case. Specifically, the Fifth Circuit has recognized:

> The Due Process Clause of the Fourteenth Amendment requires notice and a hearing before termination from public employment only if such termination would infringe a liberty or property interest. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972). A public employee has a property interest in his job if he has a legitimate claim of entitlement to it, a claim which would limit the employer's ability to terminate the employment. That claim of entitlement, however, must be determined by reference to state law. Bishop v. Wood, 426 U.S. 341, 344 (1976); see Roth, 408 U.S. at 577. A claim of entitlement to job tenure may be created directly by state statute or by a written contract, or by a "mutually explicit understanding" enforceable under state law as an implied contract. See Perry v. Sindermann, 408 U.S. 593, 601–02 (1972).

Johnson v. Southwest Miss. Reg'l Med. Ctr., 878 F.2d 856, 858 (5th Cir. 1989) (alterations in original). In the case *sub judice*, Jordan has not presented any evidence that he was entitled to continued employment with the MSDH through either a state statute or an express or implied contract, or that he had a property interest in his position as Bureau Director II of Immunization. In fact, the record shows, that as a non-state service employee, he had no property interest in that position. See Defs.' Mot. for Summ. Jud., Ex. 11 (Employee Handbook) at Section 5 (providing: "Non-state service employees cannot attain permanent state service while employed in a non-state service position. A non-state service employee has no property rights to his/her job, and may be terminated with or without cause or notice by the appointing authority."). See e.g. Scanlon v. Department of Mental Health, 828

15

F. Supp. 421, 426 (S.D. Miss. 1993) (finding that a non-state service employee in Mississippi did not have a cognizable property interest in his position). As Jordan did not have a property interest in his position as Bureau Director II of Immunization, the Court finds that neither Sennett nor Craig violated his Fourteenth Amendment rights by failing to provide notice or a hearing before he was terminated. See Johnson, 878 F.2d at 859 ("A public employer violates the Due Process Clause by discharging an employee without notice and hearing only if that employee has a property interest in continued employment at the time he is discharged."). Additionally, because Jordan had no property interest in his employment from which a Fourteenth Amendment due process deprivation claim may arise, his claim under 42 U.S.C. § 1983 fails. Accordingly, the Court finds that Sennett and Craig are entitled to qualified immunity on Jordan's Section 1983 claim, and additionally finds that there does not exist a genuine issue of material fact with regard to whether he may recover on those claims.

Finally, as the Court finds that Defendants are entitled to summary judgment on Jordan's claims arising under Title VII and 42 U.S.C. § 1983, and as he has not alleged any state law claims in this lawsuit, the Court finds there does not exist a genuine issue of material fact with regard to his claims for emotional distress

and/or mental anguish and, therefore that Defendants are entitled to summary judgment on those claims.

### IV.  Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Defendants for Summary Judgement [Docket No. 76] is hereby granted.  A Final Judgment will be entered dismissing this case with prejudice.

IT IS FURTHER ORDERED that each party is to bears it own fees and costs incurred as a result of this litigation.

IT IS FURTHER ORDERED that the Motion of Defendants in Limine [Docket No. 86] is hereby dismissed as moot.

SO ORDERED this the 11th day of June, 2008.


                                    s/ William H. Barbour, Jr.
                                    UNITED STATES DISTRICT JUDGE